UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JESSE LEAHY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 08-340-P-S |
| | ) Crim. No. 04-24-P-S |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Jesse Leahy has filed a 28 U.S.C. § 2255 motion seeking relief from his February 17,

2005, 18 U.S.C. § 922(g)(1) and § 924(e) conviction for being a felon in possession of a firearm

for which he received a 262-month sentence. Leahy took an unsuccessful direct appeal.  In its

decision the First Circuit concluded:  "For aught that appears, Leahy was fairly tried, justly

convicted, and lawfully sentenced. Consequently, we uphold the conviction and sentence,

without prejudice, however, to Leahy's right, should he so elect, to revive his ineffective

assistance of counsel claim on collateral review." United States v. Leahy, 473 F.3d 401, 413 (1st

Cir. 2007), cert. denied, 128 S. Ct. 374 (2007).

   In this 28 U.S.C. § 2255 proceeding Leahy is represented by counsel[1] and he presses

four grounds.  One, he faults his attorney for failing to object to his Armed Career Criminal Act

predicate convictions; two, he faults counsel for failing to protect him from unfair prejudice in

the presentation to the jury of his felony record, arguing that counsel should have insisted that

the United States enter into a stipulation that he was a felon; three, he faults his attorney for not

objecting to a prosecutor's question targeted at Leahy's exercise of his right to remain silent even

though the error was so blatant that this Court suggested a curative instruction; and, four, he

---

[1]     Counsel signed the petition on October 7, 2008, representing that he had been retained on September 21, 2008, for this matter and there was insufficient time to obtain Leahy's signature. (Doc. No. 1 at 13.)

faults his counsel for not presenting three types of exculpatory evidence.  The United States has

filed a response framed as a motion for summary dismissal. (Doc. No. 13.)  Leahy has filed a

reply.  I now recommend the court deny the petition, thereby, in effect, granting the United

States' motion.

*Discussion*

**A.    Ineffective Assistance of Counsel Standard**

The First Circuit summarizes the standard for analyzing ineffective assistance claims

stemming from a federal prosecution as follows:

> "The essence of an ineffective-assistance claim is that counsel's
> unprofessional errors so upset the adversarial balance between defense and
> prosecution that the trial was rendered unfair and the verdict rendered suspect."
> Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a
> defendant must show both that counsel's representation fell below an objective
> standard of reasonableness and that there exists a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding would have been
> different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other
> words, a defendant must demonstrate both seriously-deficient performance on the
> part of his counsel and prejudice resulting therefrom. …
>       Although the Supreme Court in Strickland discussed the performance
> prong of an ineffectiveness claim before the prejudice prong, the Court made
> clear that "there is no reason for a court deciding an ineffective assistance claim to
> approach the inquiry in the same order or even to address both components of the
> inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the
> Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of
> lack of sufficient prejudice, which we expect will often be so, that course should
> be followed." Id.

United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir. 2008).

With respect to Leahy's challenges, three tenets of 28 U.S.C. § 2255 review are relevant.

First: "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy

and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid

second-guessing counsel's performance with the use of hindsight."  Knight v. Spencer, 447 F.3d

6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).   Second, "counsel was under no

obligation to raise meritless claims.  Failure to do so does not constitute ineffective assistance of

counsel." Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (citations omitted).  And, third,

"when, as in this case, a petition for federal habeas relief is presented to the judge who presided

at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned

during previous proceedings and make findings based thereon without convening an additional

hearing."  United States v. McGill,11 F.3d 223, 225 (1st Cir. 1993).

**B.      Background**

      Prefacing its discussion of Leahy's grounds on direct appeal, the First Circuit

summarized:

> While the factual scenario portrayed at trial is littered with testimonial
> conflicts and is at some points shrouded in ambiguity, the facts relevant to this
> appeal are comparatively straightforward.
> On July 27, 2003, defendant-appellant Jesse Leahy, a convicted felon, had
> an altercation with a group of teenagers near his mother's home in Kezar Falls,
> Maine. According to Leahy, he withdrew from the scene, but the youths followed
> him and attempted forcibly to enter his mother's house. Ostensibly fearing the
> maddened crowd, Leahy grabbed an Astra 9mm pistol that he knew his mother
> kept in a kitchen drawer. He emerged from the residence armed and confronted
> his tormentors.
> During the ensuing imbroglio, Leahy admittedly fired the weapon. The
> protagonists' versions of what happened differ materially. Leahy asserts that he
> did no more than fire warning shots into the ground to scare away attackers who
> were attempting to inflict serious bodily injury on him. Other witnesses describe
> Leahy as the aggressor and assert that he chased after the youths, shot towards
> them, and pistol-whipped two of their number.
> In all events, the youths fled. Once that occurred, Leahy went back into
> the dwelling and hid the gun. Police soon arrived at the scene. After a twelve-hour
> standoff, they entered the premises and arrested Leahy. A search revealed not
> only the hidden pistol but also a Marlin rifle stashed in a pantry closet. Male DNA
> profiles found on the rifle were consistent with those found on the pistol (although
> no DNA was specifically matched to Leahy). In due season, a federal grand jury
> handed up an indictment that charged Leahy with being a felon in possession of a
> firearm. See 18 U.S.C. § 922(g)(1). The indictment referenced both the pistol and
> the rifle.
> Leahy's criminal record included felony convictions for assault and
> carrying a dangerous weapon. At trial, his then-counsel did not press for a
> stipulation that Leahy was a previously convicted felon (one exchange with the

> judge suggests that counsel may not have realized that he could compel the
> government to stipulate to this point). In the absence of a stipulation, the
> prosecutor was able to introduce independent evidence of the prior convictions.

Leahy, 473 F.3d at 404.


### C.      Leahy's 28 U.S.C. § 2255 Claims

### 1.      *Ground One:  Counsel's performance vis-à-vis Leahy's Armed Career Criminal Act sentence*

In his first 28 U.S.C § 2255 ground Leahy asserts that his attorney at sentencing was

ineffective because he failed to object to two of the three predicate convictions leading to his

Armed Career Criminal Act (ACCA) fifteen-year sentence exposure.    He explains that this

Court concluded that three out of four possible convictions satisfied the ACCA definition.

Leahy believes that two of these three operative convictions could have been challenged by

counsel.  He argues that counsel should have objected "because the Court determined they were

qualifying violent felonies based on information that was not approved by the categorical

approach."  One is a Massachusetts conviction for carrying a dangerous weapon (brass knuckles)

which he describes as being prior to 1998 and as to which his civil rights were restored.  The

second is a Colorado conviction for third degree assault which he describes as not qualifying as

violent felony because it does not require physical force.  Leahy has attached copies of records

pertinent to these two convictions.  The Massachusetts conviction involving brass knuckles is

found in Paragraph 29 of the Presentence Investigation Report (PSI).  It is not one of the three

predicate convictions that form the ACCA exposure, although this conviction is identified in the

Indictment as a 2000 conviction based on conduct occurring in 1994.

Paragraph 31 of the PSI indicates that at the age of eighteen, Leahy committed indecent assault and battery on a person fourteen or over.  (PSI ¶ 31.)[2]  This was the predicate offense that Leahy challenged in his direct appeal and does not challenge here.   Paragraph 36 of the PSI is a summary of the Denver, Colorado third degree assault offense.  (PSI ¶ 36.)  This conviction is the second offense listed in Leahy's indictment.   Paragraph 38 summarizes the facts known about the 2002 Edgartown, Massachusetts conviction for assault and battery, representing: "Court records indicate that the defendant assaulted [a female] and caused damage to a wall in her residence."  (PSI ¶ 38.)[3]

With regards to his direct appeal of his ACCA status vis-à-vis the Paragraph 31 predicate offense, the First Circuit reasoned: "The question here is whether Leahy's indecent assault and battery conviction is for a crime that 'presents a serious potential risk of physical injury to another.'  We agree with the sentencing court that the conviction meets this definition."  Leahy, 473 F.3d at 411.  The Panel concluded: "The short of it is that the lower court correctly sentenced Leahy as an armed career criminal."  Id. at 412.

The United States points out that this Court's  review of Leahy's ACCA challenge to his Massachusetts indecent assault and battery conviction in Paragraph 31 of the PSI demonstrates the Court's awareness of the categorical approach command of Taylor v. United States, 495 U.S. 575 (1990).  The First Circuit's discussion acknowledges the propriety of this approach.  Leahy, 473 F.3d at 411-12.  Thus, Leahy's argument that this Court did not use the categorical approach in evaluating his other two predicate offenses loses some wind from its sails.

---

[2]     This is the third listed offense in the indictment.
[3]     It also indicates that an August 14, 2002, warrant for violation of the terms of Leahy's probation remained active for  Massachusetts (statewide only).  This Paragraph 38, 2002 Massachusetts assault and battery conviction  is not one of the offenses listed in the indictment or named in the amended prosecution version.  The fact that the indictment did not allege that Leahy had been found guilty of three prior violent felony offenses was addressed at sentencing.  (See Sentencing Tr. at 26 – 28.)

Attached as Exhibit A to Leahy's 28 U.S.C. § 2255 motion is a copy of a May 1994 complaint in a Massachusetts district court for carrying a dangerous weapon; as the United States points out this conviction is reflected in Paragraph 29 of the PSI and was not used as part of this Court's ACCA determination.[4]  In his reply brief Leahy does not address this conviction, presumably conceding that there are no grounds to do so.

Exhibit B to Leahy's § 2255 motion is a memorandum to " Whom it May Concern," issued by a Denver, Colorado county court dated April 26, 2007.  It seems to pertain to Paragraph 36 of the PSI, providing an August 5, 1999, date with an indication that a felony "F5" menacing charge had been dismissed and that a third degree assault "M1" misdemeanor charge resulted in a guilty conviction.  As the United States points out this document was issued far after the sentencing and is not the type of evidence that would have swayed this Court's 2005 Taylor analysis.  In support of its motion for summary dismissal, the United States has filed its Exhibit 31 which is a copy of the documentation already presented to this Court as part of the sentencing proceedings. (Doc. No. 13-3.)  Neither of these two submissions is descriptive of the conduct involved.   However, it is clear that at sentencing this Court had already considered the qualification of this conviction as a predicate offense.

In his reply memorandum Leahy insists that the failure to adequately investigate criminal history in view of Leahy's ACCA exposure meets his Strickland burden on both prongs.  (Reply Mem. at 2-3.)  Citing United States v. Colon-Torres, 382 F.3d 76 (1st Cir. 2004), Leahy clarifies that "the factual dispute is related to the Government's ability to prove that paragraph 34 of the pre-sentence report could support the Court's finding that the conviction for third degree assault

---

[4]        The United States also points out that Leahy has not provided any support  -- either in the form of documentation or case citation -- that would draw this court into a consideration of whether or not his civil rights were restored as to this conviction.

in Colorado was a crime of violence.  If the Government cannot show the crime of violence

finding was justified, than counsel's performance was deficient."  (Id. at 3-4.)[5]

At sentencing, it was clarified that Government Exhibit 31, related to Paragraph 36 – at

Page 12 – of the PSI, a conviction for assault in the third degree in the county court in Denver,

Colorado.  (Sentencing Tr. at 21.)   The Court admitted this exhibit over defense counsel's

objection.  (Id. at 23.)    Government Exhibit 31 does document that Leahy was guilty of third

degree assault but otherwise is non-descriptive.  The description in the PSI is as follows:

> According to police reports, this incident started when Kameshi Kollack,
> and her roommate, Nahteka Bundy, became involved in an argument over
> Bundy's recent decision to move out of their apartment.  Bundy brought several
> people, including the defendant, to the apartment to help her remove her personal
> items.  The argument escalated as Kollack and Bundy began to push and shove
> each other.  The defendant and another individual named Dwayne Kentris, then
> joined in the fray.  Kentris struck Kollack several time with his fists while the
> defendant pulled out a small knife, put it near Kollack's throat and threatened to
> kill her.  The fight ended when Kollack and her other roommate started to call the
> police.
> Further investigation by the police determined that both Kentris and the
> defendant were self-admitted members of the Black Gangster Disciple gang, with
> the defendant's street name being "Shamrock."  After pleading guilty to the
> assault charge, the defendant was placed on probation.

(PSI ¶ 36.)

Leahy relies on United States v. Perez-Vargus, 414 F.3d 1282, 1287 (10th Cir. 2005) and

United States v. Garcia, 470 F.3d 1143, 1146 (5th Cir. 2006) in support of his argument that the

Colorado offense should have been scrutinized by counsel to see if its use as a predicate ACCA

offense could have been challenged.   He also cited to the First Circuit's United States v. Giggey,

551 F.3d 27, 40-41 (1st Cir. 2008).  He asserts that the Colorado third degree assault is more like

---

[5]      Leahy's § 2255 attorney argues that the United States is mistaken in its identification of Paragraph 36 as the
Colorado conviction in question, maintaining that it is Paragraph 34 that is at issue.  (Id. at 5.)  However, Paragraph
36 is the operative Colorado conviction; Paragraph 34 addresses a 1997 Colorado conviction for false
information/concealed weapon conduct  for which Leahy received four days in jail and which was not even included
in the criminal history point calculation.

the driving under the influence offense in <u>Begay v. United States</u>, __ U.S. __, 128 S.Ct 1581 (Apr. 16, 2008).

With respect to the Tenth Circuit's <u>Perez-Vargus</u>, it involved the application of U.S.S.G. 2L1.2.  Distinguishing that guideline from the career criminal guideline, the Tenth Circuit held in <u>United States v. Paxton</u> "that a conviction under Colo.Rev.Stat. § 18-3-204 for third-degree assault is a crime of violence under U.S.S.G. § 4B1.2(a)(2) because the conduct necessary to sustain the conviction presents a serious potential risk of physical injury to another." 422 F.3d 1203, 1207 (10th Cir. 2005). <u>Accord</u> <u>United States v. Krejcarek</u>, 453 F.3d 1290, 1295 (10th Cir. 2006).

However, the Fifth Circuit's <u>United States v. Garcia</u> does support Leahy's current contention that there is a  legal basis for challenging the use of this conviction under § 4B1.2(a)(2).  Therein, the majority explained:

> Although we have not previously considered whether a conviction under the Colorado third-degree assault statute qualifies as a crime of violence pursuant to U.S.S.G. § 4B1.2(a)(1), our conclusion that it does not comports with a recent decision from the Tenth Circuit, in which the court held that Colorado's third-degree assault statute "does not necessarily include the use or threatened use of 'physical force' as required by the Guidelines." <u>Perez-Vargas</u>, 414 F.3d at 1287. Because some methods of violating the Colorado third-degree assault statute do not require the use, attempted use, or threatened use of physical force against the person of another, Garcia's prior conviction in Colorado for third-degree assault does not qualify as a crime of violence under § 4B1.2(a)(1).
> We are still left to decide whether Garcia's third-degree assault in Colorado involved conduct that presented a serious potential risk of physical injury to another, thus qualifying as a crime of violence under U.S.S.G. § 4B1.2(a)(2). Under § 4B1.2(a)(2), "a categorical approach is taken to determine whether the charged count of conviction, by its nature, presented a serious potential risk of physical injury." <u>United States v. Insaulgarat</u>, 378 F.3d 456, 467 (5th Cir.2004). "[A] crime is a crime of violence under § 4B1.2(a)(2) only if, <u>from the face of the indictment</u>, the crime charged or the conduct charged presents a serious potential risk of injury to a person." <u>United States v. Charles</u>, 301 F.3d 309, 314 (5th Cir.2002) (en banc) (emphasis added). "Physical injury need not in fact result, but the indictment must make it clear that the crime charged in fact posed the risk." <u>Insaulgarat</u>, 378 F.3d at 467.

We do not have the Colorado state indictment in the record before us; consequently, we cannot identify with legal certainty under which portion of the Colorado assault statute Garcia was convicted. We therefore are unable to determine whether his career offender enhancement is sustainable under U.S.S.G. § 4B1.2(a)(2). The government requests that this court remand to the district court for supplementation of the record to include the charging instrument, and Garcia does not oppose this request. Accordingly, we vacate Garcia's sentence and remand to the district court for supplementation of the record and resentencing. See United States v. Bonilla-Mungia, 422 F.3d 316, 321-22 (5th Cir.2005) (vacating sentence and remanding for supplementation of the record and resentencing where the court could not determine whether a crime of violence enhancement was proper). In doing so, we follow this circuit's well-established precedent, which "require[s] that for this part of the [ § 4B1.2(a)(2)] analysis, we consider only the conduct charged in the count of which the defendant was convicted." United States v. Turner, 305 F.3d 349, 351 (5th Cir.2002) (stating that the court "must remand for resentencing" where "[t]he charging instrument pertaining to defendant's prior conviction is not in the record").

470 F.3d at 1147 -48 (footnotes omitted).  As part of this discussion, the Panel noted:

Although the plea colloquy and sentencing transcript are in the record, they do not help us identify which elements of third-degree assault were involved in Garcia's case. Cf. Shepard v. United States, 544 U.S. 13, 16 (2005) (holding that in determining the character of an offense in the context of applying the Armed Career Criminal Act, the court is "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"); Calderon-Pena, 383 F.3d at 258-60 (holding that whenever a statute has alternative methods of commission, the court "may look to charging papers to see which of the various statutory alternatives are involved in the particular case").

Id. at 1148 n.6.  The Panel also stressed in another note:

Unlike the Tenth Circuit's decision in United States v. Paxton, 422 F.3d 1203 (10th Cir.2005), we do not decide in this case whether third-degree assault in Colorado constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(2). Instead, pursuant to Fifth Circuit law, we remand this case to the district court for supplementation of the record, recognizing that we need the indictment to answer that question. See Turner, 305 F.3d at 351. Because we leave for another day the question of whether third-degree assault in Colorado is a crime of violence under § 4B1.2(a)(2), this decision does not conflict with the Tenth Circuit.

Id. at 1148 n.7.

9

Judge Jones dissented from the opinion of the other two <u>Garcia</u> Panel members,

providing an important summary of the tension between the majority's approach and the Tenth

Circuit's conclusion in <u>Paxton</u>:

> I agree with the majority's conclusion that the Colorado third-degree
> assault statute does not require the "use of physical force" as an element of the
> offense. The Tenth Circuit recognized as much in <u>United States v. Perez-Vargas</u>,
> 414 F.3d 1282, 1286 (10th Cir.2005). However, the majority disregards the Tenth
> Circuit's later holding that a conviction under § 18-3-204 qualifies as a crime of
> violence because it "involves conduct that presents a serious potential risk of
> physical injury to another." U.S.S.G. § 4B1.2(a)(2); <u>see</u> <u>United States v.</u>
> <u>Krejcarek</u>, 453 F.3d 1290 (10th Cir.2006); <u>United States v. Paxton</u>, 422 F.3d 1203
> (10th Cir.2005). In *Paxton,* the Tenth Circuit held that "a conviction under [the
> Colorado third-degree assault statute] is a crime of violence under U.S.S.G. §
> 4B1.2(a)(2) because the conduct necessary to sustain the conviction presents a
> serious risk of physical injury to another." <u>Id.</u> at 1207; <u>see</u> <u>also</u> <u>Krejcarek</u>, 453
> F.3d at 1295 (reaffirming <u>Paxton</u> and stating that "it is clear that a third degree
> assault presents risk of physical injury").
> Instead of following these precedents, the majority remands to supplement
> the record with state court conviction documents. The Tenth Circuit rejected this
> approach in <u>Paxton</u> in concluding that a conviction under § 18-3-204 qualifies as
> a crime of violence under U.S.S.G. § 4B1.2(a)(2). See <u>Paxton</u>, 422 F.3d at 1207
> ("Nothing in the record informs us whether the bodily injury in Mr. Paxton's prior
> offense was physical or mental."); <u>see</u> <u>also</u> <u>Krejcarek</u>, 453 F.3d at 1295 (rejecting
> defendant's argument that his prior convictions did not involve the use of force
> because "the possibility that a crime may be completed without injury is irrelevant
> to the determination of whether it constitutes a crime of violence within the
> meaning of § 4B1.2").
> The majority elects to be bound by this court's categorical approach
> methodology rather than by direct holdings of a sister circuit. This is a highly
> peculiar result. It virtually assures that criminal defendants with precisely the
> same conviction records will be treated differently under the Sentencing
> Guidelines depending on the circuit where they are caught. Further, reasonable
> judges can disagree whether Colorado's assault statute involves conduct that poses
> a potential serious risk of physical injury to another. In holding otherwise, the
> majority undermines precisely the uniformity and ease of application that the
> Supreme Court's <u>Taylor</u> decision envisioned.
> Finally, the majority's decision has created an intercircuit conflict,
> notwithstanding the disclaimer added in footnote seven of their opinion. The
> Tenth Circuit rejected resort to extrinsic offense-specific papers as a requirement
> of proving that a conviction under Colorado's assault statute is a crime of
> violence. Perhaps, on remand, the government will be able to satisfy the
> majority's evidentiary standard. From the government's standpoint, however, and
> from the disparate results defendants will encounter, our circuits are split.

Id. at  1149 -50.[6]

These cases and the Jones dissent do highlight an interesting question about the use of

Colorado third degree assault convictions under U.S.S.G. § 4B1.2(a)(2).  However, with regards

to the performance of counsel at the time of Leahy's sentencing, Leahy was sentenced on April

22, 2005.  Perez-Vargas issued July 15, 2005, Paxton was decided September 9, 2005, and

Garcia is dated November 22, 2006.  There is no reason that Leahy's trial counsel should have

known of a not yet emergent inter-circuit split of authority on the significance of Colorado's

third degree assault statute.  Despite Leahy's efforts in his reply brief, there is nothing that Leahy

has presented in this 28 U.S.C. § 2255 proceeding that would warrant revisiting this 18 U.S.C.

§ 924(e)(2)(B)(ii) determination through the lens of an ineffective assistance of counsel claim,

especially given the version of the conduct underlying the assault set forth in the PSI.

*2.      Ground Two:  Counsel's performance regarding the presentation of Leahy's criminal
record to the jury rather than proceeding by stipulation*

In his second 28 U.S.C. § 2255 ground Leahy maintains that trial counsel should have

pursued a stipulation with the prosecution concerning his qualification as a felon to avoid the

presentation of evidence on his three prior convictions to the jury.  He explains that the

indictment listed three felony convictions: carrying a dangerous weapon; third degree assault;

and indecent assault and battery on a person fourteen years or over.  "The Government" Leahy

contends, "could be forced to stipulate that Mr. Leahy was a felon and the Jury would not have

had information that would have shown a propensity to commit violent acts.  The propensity

evidence d[i]minished Mr. Leahy's claims of self-defense and the jury found Mr. Leahy Guilty."

---

[6]      The docket in the underlying criminal case demonstrates that Garcia was resentenced to a term of 130
months, United States v. Garcia, 5:04CR02362-001, Docket No. 42 (S. D. Tex. Mar. 20, 2007). The statement of
reasons is sealed. (Id. Docket No. 43.)  Thus, he did obtain relief from his 188-month initial sentence.

(Sec. 2255 Mem. at 5.)  "Without the propensity evidence," Leahy urges, he "would likely have been found not guilty."  (Id. at 5-6.)

Leahy raised this challenge in his direct appeal:

> Leahy next complains that his trial counsel did not offer to stipulate to the fact the he was a previously convicted felon-an omission that opened the door for the government to introduce evidence of the unattractive particulars of Leahy's prior misdeeds. Since the government would have had no choice but to enter into such a stipulation upon a timely request, see Old Chief v. United States, 519 U.S. 172, 174 (1997), this strategy does seem puzzling. The problem, however, is that this claim is newly advanced. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir.1993).
>
> To be sure, there is a narrow exception to this rule for cases in which the record is adequately developed to permit reasoned consideration of the claim. See, e.g., United States v. Natanel, 938 F.2d 302, 309 (1st Cir.1991). Here, however, that exception does not pertain. The record below contains nothing approaching an adequate elaboration of why counsel adopted the course that he followed (Leahy suggests that his lawyer did not know of the Old Chief decision, but that fact is not pellucid from the record), nor does it provide the district court's first-hand insights as to what (if any) quantum of prejudice might have attended this strategy. Given the need for further factfinding, we decline Leahy's invitation to address the ineffective assistance of counsel claim for the first time on direct appeal. Instead, we remit him, should he desire to pursue the matter, to his remedies under 28 U.S.C. § 2255. We intimate no view of the likely outcome of such a proceeding.

Leahy, 473 F.3d at 410.

In his reply brief, Leahy "asserts that there is no objectively reasonable strategic reason to fail to stipulate to felon status, despite the fact that there is no case that specifically holds that failure to stipulate is ineffective."  (Reply Mem. at 4.)[7]   He opines:

> The Government's explanation is that the trial attorney was trying to blunt the force that these convictions would have against Mr. Leahy when he testified. Mr. Leahy has offered the explanation that the trial attorney was unaware of forcing the Government to stipulate. The problem is that neither of these offered

---

[7]     He quotes a passage from United States v. Russell, 221 F.3d 615, 623 (4th Cir. 2000) which addresses a situation in which defense counsel made an inaccurate presentation of his client's vacated felony convictions to the jury.

explanations are in the evidentiary record and until the rationale is in the record the Court cannot decide this issue.

…

…The problems with the Government's explanation is that it was not necessary to highlight these convictions at the beginning of the trial where the convictions are part of the allegations read to the jury with the indictment, Mr. Leahy did not need to make the decision to testify at the beginning of the trial, repetition only adds to the potential prejudice, and the force could have blunted on direct once the decision to testify was final. Even if the Government established that trial counsel was actually trying to blunt the force of the prejudice, the problem is that trial counsel was then creating more opportunities for the prejudice to occur.

(Id. at 8-9.)

Leahy also cites the following exchange during trial between his counsel, Attorney

Stillman and this Court:

MR. STILLMAN: Your Honor, my client previously filed a motion to dismiss this indictment pro se on the basis that his prior convictions prejudice him in this proceeding.
        I've told him these convictions were a matter of record, and that's why I have not objected to them. He insists, however, to preserve -- to the extent he can preserve his motion to dismiss, that we object to these, the admission of these convictions.
        So for that purpose, I'd like to enter that objection, just to preserve whatever rights he has with regard to the previous motions in this trial.
THE COURT: The motion to dismiss the indictment simply because the person has been convicted previously of felonies is not a proper motion, and that motion itself is not one that the Court would grant, and I denied it.
MR. STILLMAN: You did.
THE COURT: And because it's simply every felony possession charge has a prior indictment.
MR. STILLMAN: That's correct.
THE COURT: Now if you're arguing that the knowledge of the specific convictions and the nature of these convictions might prejudice the jury, that's a different argument, one that hasn't been made until this moment, and obviously the defense and the government could have stipulated his prior status as a felon and avoided the jury hearing the various specific crimes, but that wasn't done, and I asked specifically at the start of this trial whether there were any stipulations, and I was advised that there were none.
        The jury has all ready heard each of these felonies described. I think the cat's out of the bag certainly on this last one. The other two are all ready in evidence, so the request is denied.

(Feb. 15, 2005, Trial Tr. at 216-17, Doc. No. 89.)

13

Leahy relies on Old Chief v. United States, 519 U.S. 172 (1997), a case that does support a defendant's right to stipulate to prior convictions in the face of the prosecution's opposition. However, the majority did note:

> While it is true that prior-offense evidence may in a proper case be admissible for impeachment, even if for no other purpose, Fed. Rule Evid. 609, petitioner did not testify at trial; there was no justification for admitting the evidence for impeachment purposes and consequently no basis for the District Court's suggestion that the jurors could consider the prior conviction as impeachment evidence.

Id. at 176 n.2.  It is not Leahy's position in his reply memorandum that if he had been able to stipulate to his prior conviction he would not have taken the stand.  Compare Myers v. United States, 198 F.3d 615, 619 (6th Cir. 1999) ("In an attempt to persuade us that the Old Chief error was not harmless, Myers contends that, but for the stipulation he was forced to enter into, he would not have taken the stand and subjected himself to cross-examination."); see also United States v. Rogers, 542 F.3d 197, 202 n. 2 (7th Cir. 2008) ("Nothing in Old Chief, however, precludes impeachment by prior conviction under Rule 609 when the defendant in a felon-in-possession prosecution testifies as a witness in his own defense.")(citing United States v. Montgomery, 390 F.3d 1013 (7th Cir.2004)  and  United States v. Smith, 131 F.3d 685, 687-88 (7th Cir.1997)); but see United States v. Coleman, 552 F.3d 853, 859 -860 (D.C. Cir.2009).[8]

I have some question about whether under the Strickland performance prong this is the kind of tactical decision by counsel that is not reproachable in hindsight.  See 466 U.S. at 689. There is no question that the theory of the defense was self defense/justification, see Leahy, 473 F.3d at 405-09, and to advance this claim it was essential for Leahy to take the stand.  This is a strategy still uncontested by Leahy and once this pillar is in place it put Leahy in the position of

---

[8]    Coleman does give me pause.  It may be that when the Court looks at this ground based on its first-hand knowledge of this trial it might conclude that further proceedings are appropriate to address counsel's performance on this point.

being subjected to cross-examination. See Fed. R. Evid. 609. However, there does not seem to

be a strong tactical reason for not stipulating to the record so as to avoid all reference to the

criminal history other than on cross-examination.

Whether or not there is a problem under the Strickland performance prong, however, it is

my opinion after a review of the trial record that Leahy cannot meet his burden to demonstrate

prejudice. The prosecutor referred briefly to the convictions in her opening statement (Feb. 15,

2005, Trial Tr. at 40.) Defense counsel did not bring up the issue of the prior convictions in his

opening. (Id. at 42-46.) The prosecutor placed Special Agent Campbell on the stand and he

testified as to the 2000 Newton, Massachusetts conviction for carrying a dangerous weapon and

the exhibit was admitted without objection (id. at 212- 13), the Colorado third degree assault

conviction and that exhibit was admitted without objection (id. at 213-14), and the Waltham,

Massachusetts indecent assault and battery on a person 14 or over conviction (id. 214-16), and

that exhibit was the exhibit that prompted the "cat-out-of-the-bag" side-bar set forth above.[9]

Defense counsel did not cross-examine the agent. (Id. at 217.) With regards to defense counsel's

direct exam of Leahy, he did not address the prior convictions. (Feb. 16, 2005, Trial Tr. at 3-39.)

Prior to cross examination the prosecutor requested a side bar at which she indicated that she did

not intend to offer any evidence of Leahy's prior convictions because the ones that would come

in under Rule 609 were too old. (Id. at 39.) However she expressed her intent to question Leahy

about his prior use of aliases and sought a ruling on that from the Court. (Id.) Defense counsel

argued that this was not admissible for impeachment purposes or was irrelevant. (Id. at 40-41.)

The Court ruled in favor of the defense. (Id.) Leahy testified on cross that he did not know he

was a convicted felon. (Id. at 64.)

---

[9] What is more, this Court presided over the trial and the sentencing and concluded at the latter proceeding
that it would be appropriate to enhance Leahy's sentence for obstruction of justice on the grounds that he perjured
himself at trial in relaying that he was unaware of his status as a felon.

In her summation the prosecutor referred to the three prior convictions in the following

manner:

> I instruct you that the three crimes listed in the indictment are crimes
> punishable by imprisonment exceeding one year, and specifically I refer you to
> Exhibits 30, 31, and 32, which were entered in evidence and, as you recall,
> Special Agent Campbell called them judgment and commitments, and it's
> paperwork describing what those crimes were, and when Mr. Leahy was
> convicted of them. I would suggest to you that we have met our burden with
> respect to the first element.

(Feb. 17, 2005, Trial Tr. at 72.)  Defense counsel did not refer to the prior convictions in his

closing.  (Id. at 93-101.) The Court then instructed that "the three crimes listed in the indictment

are crimes punishable by imprisonment exceeding one year."  (Id. at 116.)

Accordingly, while defense counsel could have pursued a stipulation and avoided much

of the above cited record references to the prior convictions, this is not a case where the

prosecutor attempted to or succeeded in exploiting the details of a defendant's prior criminal

record to sway the jury.  Thus, even if Leahy could cross the Strickland performance threshold,

there does not exist a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. Strickland, 466 U.S. at  688, 694.

*3.*     *Ground Three:  Counsel's performance apropos the prosecutor's questions about his
statements to the police*

The third ground pressed by Leahy relates to the prosecutor's cross-examination of Leahy

about his statements to law enforcement. He explains that the prosecutor knew that Leahy had

exercised his right to remain silent and yet his counsel failed to object or take action even though

this Court suggested a curative instruction, counsel failing to realize the seriousness of what had

happened.   He maintains that his attorney "should have objected and moved for a mistr[ial]l on

the basis of [a] 5th Amendment violation and asserted that the government was barred from a

second trial on double jeopardy grounds.  The judge did give a cur[]ative instruction but it was at

the end of the trial and the damage was already done." (Sec. 2255 Mot. at 7.)

In response, the United States persuasively argues:

> Leahy's quarrel with his trial counsel's failure to object to being asked on
> cross-examination, "You didn't tell [a police officer] what happened to you that
> you just told the jury" also fails both parts of the Sixth Amendment test. See
> Strickland, 466 U.S. at 689. First, it is by no means clear that counsel had a proper
> basis for objecting to this impeachment evidence. In Jenkins v. Anderson, 447
> U.S. 231, 236 (1980), the Supreme Court reiterated fifty-year-old precedent
> holding that "the Fifth Amendment is not violated when a defendant who testifies
> in his own defense is impeached with his prior silence." Id. (citing Raffel v.
> United States, 271 U.S. 494 (1926)).
>
> Even if counsel should have objected, however, Leahy was not prejudiced
> for two reasons. See Strickland, 466 U.S. at 689. First, in light of Leahy's lengthy
> and detailed account of the altercation - which conflicted with the Government's
> evidence in almost every material way - this brief, one-line question and Leahy's
> equally brief reply had at most marginal impact. Nevertheless, there was no
> prejudice from counsel's failure to object because, even without being asked, the
> trial court forcefully told the jury in the closing instructions that they could draw
> no inferences whatever from Leahy's failure to tell the police the same story he
> gave the jury. It instructed:
>
> > During the defendant's testimony, he was asked whether he made
> > certain statements to the authorities at the time of his arrest. I need to
> > instruct you that everyone who has been arrested has a Constitutional right
> > to remain silent. Thus at the time of his arrest, the defendant was within
> > his rights to remain silent and not say anything to the police.
> >
> > You are not permitted to use the fact that the defendant remained
> > silent at the time of his arrest as an element of guilt, nor are you allowed to
> > use the fact that he remained silent at the time of his arrest in assessing the
> > credibility of his later testimony here at trial. In other words, you may not
> > draw any negative inference from the fact that Mr. Leahy chose not to
> > make a statement to authorities at the time of his arrest.
>
> Juries are presumed to follow instructions such as these. See Frances v. Franklin,
> 471 U.S. 307, 323-324 (1985). Thus, whatever minimal prejudice the question on
> cross-examination caused Leahy, the instruction undid any damage.

(Mot. Summ. Dismiss at 20-21.)

Leahy has not addressed this claim in his reply memorandum and, particularly in view of

this Court's curative instruction, see cf.  United States v. Allen, 469 F.3d 11, 17 (1st Cir. 2006)

("Given the clear instructions of the trial judge and the isolated nature of the comment, whatever

17

error the statement may have had, it cannot be said to have prejudiced, in any way, the outcome of the case."), I conclude that he has not demonstrated Strickland prejudice.

### 4.      Ground Four:  Counsel's performance regarding the possible presentation of exculpatory evidence

The final § 2255 ground forwarded by Leahy is his assertion that his trial attorney failed to develop and present exculpatory evidence despite his client's instructions to do so.   He represents that his attorney refused to present ballistic evidence, medical testimony, and evidence of his victim's prior acts.  He believes that this evidence would have demonstrated that the shots Leahy fired were warning shots, that the victim's injuries were from Leahy's fist, and that Leahy's fear of harm was justified by the victim's burglaries in the neighborhood.  In his form 28 U.S.C. § 2255 motion Leahy offers nothing but his conclusory assertion that there was possible ballistic, medical, and prior-act evidence in favor of the defense to be had.

For its part the United States argues:

Here, defense counsel fully cross-examined the Government's witnesses on inconsistencies in their accounts and valiantly endeavored to portray them as a band of violence-prone teenaged miscreants who threatened Leahy to the extent he felt compelled to defend himself by firing warning shots into the ground with a pistol. No reason exists to believe that had any of this evidence - ballistic, medical, or impeaching - been developed or adduced at trial, the outcome would have been different. See Strickland, 466 U.S. at 689.

(Mot. Summ. Dismissal at 24.)

Leahy has done nothing in his reply memorandum to defend this ground.  "When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing." McGill, 11 F.3d at 225 (citations omitted). "A district court may forego such a hearing when 'the movant's allegations, even if true, do not entitle him to relief, or ... [when] the movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." ' "  Owens v. United States,

18

483 F.3d 48, 57 (1st Cir. 2007) (quoting David v. United States, 134 F.3d 470, 477 (1st

Cir.1998)); see also McGill, 11 F.3d at 225 ("In determining whether the petitioner has carried

the devoir of persuasion in this respect, the court must take many of petitioner's factual

averments as true, but the court need not give weight to conclusory allegations…") (citations

omitted).  As it stands this claim is "inadequate on its face," David, 134 F.3d at 477, and it is

subject to summary dismissal.

### *Conclusion*

For the reasons above I recommend that the Court deny Leahy 28 U.S.C. § 2255 relief.  I

further recommend that a certificate of appealability should not issue in the event Leahy files a

notice of appeal because there is no substantial showing of the denial of a constitutional right

within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, within ten (10) days of being served
with a copy thereof.  A responsive memorandum shall be filed without ten (10)
days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
May 5, 2009                                    U.S. Magistrate Judge

19